IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

GLENN CAROLE HOLSOME,

        Petitioner,                  No. CIV S-04-0924 LKK CHS P

    vs.

DAVE RUNNELS, Warden, et al.,

        Respondents.          FINDINGS AND RECOMMENDATIONS

_____/

I.    <u>INTRODUCTION</u>

        Petitioner Glenn Holsome, a state prisoner proceeding with appointed counsel[1], has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner attacks his conviction in the San Joaquin County Superior Court, case number SF079647A, for spousal rape

---

[1] Petitioner was appointed counsel on June 28, 2004. On March 28, 2006, the District Judge ordered this matter stayed pending exhaustion and granted appointed counsel 30 days to file a notice of completion. Almost two years later, petitioner requested that review of this petition be expedited. (Docket # 32) The Magistrate Judge previously assigned to this matter then inquired of appointed counsel as to whether state court remedies had been exhausted. Counsel responded that they had not and that the stay could be lifted. (Docket #34) Petitioner then wrote asking for legal assistance because his appointed counsel had "abandoned" him. (Docket #41) Petitioner was given the choice of proceeding with his previously appointed counsel, proceeding pro se, or contacting the Federal Defender to determine if they would seek to be substituted in as counsel on his behalf. (Docket #44) Petitioner eventually "agreed to keep [previously appointed counsel] on as [his] attorney." (Docket #49)

and false imprisonment by violence.

II. <u>CLAIMS</u>

Petitioner claims that the trial court erred:

    A.    By allowing admission of propensity evidence; and

    B.    By informing the jury petitioner allegedly had a prior conviction for rape and was an alleged habitual sexual offender.

Upon careful consideration of the record and the applicable law, the undersigned will recommend that petitioner's petition for habeas corpus relief be denied.

III. FACTUAL AND PROCEDURAL BACKGROUND

    A.    <u>Facts</u>[2]

> In 1997, the victim and defendant were married. Defendant started drinking in November 1999 and became verbally abusive. In December 1999, the victim learned that defendant had hepatitis A, B and C, some of which had been sexually transmitted, and made defendant use a condom. Their sex life changed and the victim no longer trusted defendant because of his promiscuity and diseases. In May 2000, defendant moved out and the victim changed the locks.
>
> On June 2, 2000, the victim allowed defendant to return on the conditions that he use the spare bedroom and agree that there would be no sexual intercourse. He was not given a key. From June 2 through June 9, the victim and defendant did not engage in sexual intercourse.
>
> In the evening on June 9, 2000, the victim and defendant were drinking. At approximately 7:00 p.m., the victim's sister called. The victim's sister was shocked that defendant answered the phone; the victim had not told her sister that defendant had been allowed to move back in. Defendant eavesdropped on the conversation and became irate, calling the victim a "dirty bitch."
>
> Later in the evening, defendant, intoxicated, grabbed the victim, telling her "Bitch, I'm going to fuck you all night long." He pulled her into the bedroom. She resisted at first but he said he was going to kill her. He pushed her onto the bed, forcibly removed her pants and panties and climbed on top of her. After putting on a condom

---

[2] This statement of facts is taken from the November 25, 2002 opinion by the California Court of Appeal for the Third Appellate District (hereinafter Opinion), filed by respondents as Lodged Document No.3.

2

so that she would "not be able to prove" it, he raped the victim, ignoring her pleas to stop. He had penetrated her first with his hand. He told her that he had disabled the telephone to prevent her from calling the police. He rolled over onto the bed, keeping his arm over the victim which prevented her from leaving. About one hour later, when the victim believed defendant had fallen asleep, she got up and went to the front door, planning to escape wearing only a T-shirt. Defendant stopped her as she unlocked the door. He slapped her and pushed her down to the floor. She fell into a ceramic planter and plant, damaging the plant and injuring her buttocks. Defendant pulled her up stating, "Bitch, I'm going to kill you." He pushed her onto the bed where he again raped her despite her protestations. He also penetrated her with his hand. He rolled over onto the bed, placing his hand on her which prevented her from leaving. She got up a couple of hours later. Defendant's arm was no longer preventing her from leaving. She rattled some dishes in the kitchen to make sure he was still asleep. She then left.

The victim called the police on her cell phone about 6:00 a.m. on June 10, 2000, and met police at a grocery store. An officer described the victim as very scared, nervous and upset. At the victim's apartment, an officer found dirt on the floor from a planter near the front door. The plant in the planter looked damaged. The bed linens had a reddish spot, possibly blood. A condom wrapper was found on the dresser.

The victim sustained a large bruise on her buttocks. She had a half-inch long tear of the posterior fourchette of her vagina which was caused by friction and consistent with a sexual assault.

The victim admitted on cross-examination that she had a bank account with defendant's name on it to which his monthly Social Security check was directly deposited. After defendant's arrest and incarceration, one check had been deposited into the account.

The prosecution introduced defendant's prior acts of domestic violence. In May 2000, defendant spit in the victim's face and pulled out the telephone cords. The victim used her cell phone to call the police. She did not want to press charges but wanted defendant to leave. The police removed defendant from the house. Defendant told an officer that the phone cords were his and that he did not think there was a problem if he ripped them out of the wall.

In July 1996, defendant physically abused his then girlfriend with whom he lived. She sustained an injured jaw. Defendant explained to an officer that he hit her because she had been with three men behind the apartment complex, engaging in oral copulation with one of them.

Defendant was also convicted in May 1986 for felony domestic violence (§ 273.5).

The defense presented the testimony of the victim's father and son and defendant's mother, niece and sister-in-law. According to the

> victim's father, the victim was untruthful the majority of the time and, on one occasion, told her father that she planned to butt her head against the wall, call the police and tell them that defendant was responsible.
>
> The victim's son introduced defendant to the victim. The son met defendant in jail. In 1996, the three of them got high on crack cocaine in a motel room. The son said the victim had not been a very honest person. The victim had a restraining order for the last two years against her son. In 1999, the son pleaded guilty to terrorist threats either against the victim or defendant. In 1987, the son was convicted of felony battery upon a spouse. In 1985, the son was convicted of selling marijuana. In 1981, he was convicted of burglary.
>
> Defendant's mother described the victim as a liar. Defendant's mother claimed that the victim had planned to "put[ ] [defendant] away" for Father's Day because she did not want him anymore and wanted to be free. Defendant's niece had overheard the victim say that she planned to get rid of defendant by putting him in jail. Defendant's sister-in-law claimed the victim had told her the same.

/////

Opinion at 2-6.

The jury found petitioner guilty of spousal rape and false imprisonment by violence. Id. at 1. After petitioner admitted that he had a prior conviction for rape, the trial court found that he also had convictions for three prior serious felonies. Id. The court sentenced him to an aggregate term of forty-one years to life. Reporter's Transcripts on Appeal ("RTA") at 392.

### B. Post Trial Proceedings

#### 1) State Appellate Review

Petitioner filed a timely appeal with the California Court of Appeal, Third Appellate District, on May 30, 2001. Answer, Lodged Doc. 4 at 1. In a November 26, 2002 unpublished opinion, the Court of Appeal affirmed the conviction but modified petitioner's sentence to seventy-five years to life. Answer, Lodged Doc. 3 at 16.

Petitioner then petitioned the California Supreme Court on January 6, 2003. Answer, Lodged Doc. 5. That petition was denied on February 11, 2003. Answer, Lodged Doc. 7.

2)    <u>State Habeas Review</u>

On June 7, 2004 petitioner filed a state habeas petition in the California Supreme Court. Answer, Lodged Doc. 8. The California Supreme Court denied that petition on May 11, 2005. Answer, Lodged Doc. 9.

3)    <u>Federal Habeas Review</u>

On May 10, 2004, petitioner filed his original federal petition for writ of habeas corpus. On March 28, 2006 this court granted respondent's motion to dismiss a portion of petitioner's first claim and stayed this action pending exhaustion of state court remedies. On July 29, 2008 that stay was lifted.

## IV. APPLICABLE STANDARD OF HABEAS CORPUS REVIEW

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a).

Federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Although "AEDPA does not require a federal habeas court to adopt any one methodology," <u>Lockyer v. Andrade</u>, 538 U.S 63, 71 (2003), there are certain principles which guide its application.

First, the "contrary to" and "unreasonable application" clauses are different. As the Supreme Court has explained:

> A federal habeas court may issue the writ under the "contrary to"

5

> clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in Williams [v. Taylor, 529 U.S. 362 (2000)] that an unreasonable application is different from an incorrect one.

Bell v. Cone, 535 U.S. 685, 694 (2002). It is the habeas petitioner's burden to show the state court's decision was either contrary to or an unreasonable application of federal law. Woodford v. Visciotti, 537 U.S. 19, 123 S. Ct. 357, 360 (2002). It is appropriate to look to lower court decisions to determine what law has been "clearly established" by the Supreme Court and the reasonableness of a particular application of that law. See Duhaime v. Ducharme, 200 F.3d 597, 598 (9th Cir. 2000).

Second, the court looks to the last reasoned state court decision as the basis for the state court judgment. Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002). So long as the state court adjudicated petitioner's claims on the merits, its decision is entitled to deference, no matter how brief. Lockyer, 538 U.S. at 76; Downs v. Hoyt, 232 F.3d 1031, 1035 (9th Cir. 2000).

Third, in determining whether a state court decision is entitled to deference, it is not necessary for the state court to cite or even be aware of the controlling federal authorities "so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8 (2003). Moreover, a state court opinion need not contain "a formulary statement" of federal law, so long as the fair import of its conclusion is consonant with federal law. Id.

V. DISCUSSION OF PETITIONER'S CLAIMS

    A. Propensity Evidence

        1) Description of Claim

At trial, evidence of petitioner's two prior acts of domestic violence were

admitted pursuant to California Evidence Code section 1109 ("Section 1109"). Section 1109 allows the admission of evidence of prior acts of domestic violence in order to prove a charged act of domestic violence. See CAL. EVID. CODE § 1109; Martin v. Ornoski, 2009 WL 537075 at *10 (N.D.Cal. March 2, 2009). The first incident occurred in May of 2000 when petitioner disabled the telephones in his residence and spit in the victim's face.[3] RTA at 70. The second incident occurred in July of 1996 when petitioner physically assaulted his then live-in girlfriend. Opinion at 5. Petitioner argues that admission of this evidence violated his right to due process. Petition at 7-8.

        2)    State Court Opinion

The state court rejected this claim in a few sentences finding that "[n]umerous decisional authorities have rejected claims similar to defendant's claims." Opinion at 13.

        3)    Applicable Law and Discussion

Under Ninth Circuit law, "a federal court cannot disturb on due process grounds a state court's decision to admit prior bad acts evidence unless the admission of the evidence was arbitrary or so prejudicial that it rendered the trial fundamentally unfair." Walters v. Maass, 45 F.3d 1355, 1357 (9th Cir. 1995). However, for purposes of AEDPA, petitioner must demonstrate that the California courts' rejection of his federal due process claim was contrary to or an unreasonable application of "clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003).

The United States Supreme Court "has never expressly held that it violates due process to admit other crimes evidence for the purpose of showing conduct in conformity therewith, or that it violates due process to admit other crimes evidence for other purposes without an instruction limiting the jury's consideration of the evidence to such purposes."

---

[3] Petitioner was also alleged to have disabled the telephones in his residence immediately before attacking the victim. RTA at 60.

Garceau v. Woodford, 275 F. 3d 769, 774 (9th Cir. 2001), overruled on other grounds by Woodford v. Garceau, 538 U.S. 202 (2003). In fact, the Supreme Court has expressly left open this question. See Estelle, 502 U.S. at 75 n.5 ("Because we need not reach the issue, we express no opinion on whether a state law would violate the Due Process Clause if it permitted the use of 'prior crimes' evidence to show propensity to commit a charged crime"). Petitioner therefore has failed to demonstrate that the California courts' rejection of his federal due process claim was contrary to or an unreasonable application of "clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). See Larson v. Palmateer, 515 F.3d 1057, 1066 (9th Cir. 2008) (claim that trial court's use of "other crimes" evidence to show a propensity for criminal activity violated due process properly denied under AEDPA because the Supreme Court has "expressly left this issue an 'open question'"); Alberni v. McDaniel, 458 F.3d 860, 863-67 (9th Cir. 2006), cert. denied. 549 U.S. 1287 (2007) (denying the petitioner's claim that the introduction of propensity evidence violated his due process rights under the Fourteenth Amendment because "the right [petitioner] asserts has not been clearly established by the Supreme Court, as required by AEDPA"); Holgerson v. Knowles, 309 F.3d 1200, 1202 (9th Cir. 2002) (habeas relief not warranted unless due process violation was "clearly established" under federal law as determined by the Supreme Court); Alvarado v. Hill, 252 F.3d 1066, 1068-69 (9th Cir. 2001) (same).

Even when analyzed under Ninth Circuit law, petitioner's argument fails because admission of the evidence was neither arbitrary or so prejudicial that it rendered his trial fundamentally unfair. The prior acts evidence against petitioner was admitted pursuant to California state law, was reliable, and was relevant to the charged crimes. Although arguably inflammatory, "[the fact] that prior acts evidence is inflammatory is not dispositive in and of itself." U.S. v. LeMay 260 F.3d 1018, 1030 (9th Cir. 2001). The People's case against petitioner was substantial and the prior acts evidence was no more inflammatory than the circumstances of the charged crimes.

Further, any error in admitting this testimony did not have "a substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 637 (1993). See also Penry v. Johnson, 532 U.S. 782, 793-96 (2001). The jury does not appear to have been prejudiced by the testimony concerning petitioner's prior acts as they acquitted petitioner of several felony counts including inflicting corporal injury upon a spouse. RTA at 370.

For all of these reasons, petitioner is not entitled to relief on this claim.

B. Habitual Sexual Offender[4]

1) Description of Claim

Before trial petitioner filed a motion in limine seeking to bifurcate the "issue of defendant's alleged prior convictions" from that of his guilt. Opinion at 7. At a hearing on motions in limine the trial judge granted that request. Id. Then during voir dire the trial judge granted petitioner's motion in limine to prevent the prosecution from introducing evidence of petitioner's prior convictions for murder and rape. RTA at 380. Upon reading the charges to the jury however, the trial judge realized that the prosecution was alleging sentencing enhancements based on petitioner's prior conviction for rape and his alleged status as a "habitual sex offender." Id.; Opinion at 6-9. The judge called both counsel up to the bench and advised them that he was going to have to allow in evidence of the prior rape conviction, despite his previous rulings, so that the prosecution could attempt to prove these enhancements. RTA at 380. The judge then read the alleged sentencing enhancements to the jury.[5] Id. At a later date petitioner admitted

---

[4] Respondent argues this claim is procedurally defaulted. A reviewing court need not invariably resolve the question of procedural default prior to ruling on the merits of a claim where the issue of procedural default turns on difficult questions of state law. Lambrix v. Singletary, 520 U.S. 518, 524-25 (1997); see also Busby v. Dretke, 359 F.3d 708, 720 (5th Cir. 2004). Under the circumstances presented here petitioner's claim can be resolved more easily by addressing it on the merits. Accordingly, this report will assume that it is not procedurally defaulted.

[5] The enhancements read:

9

1 those enhancements to prevent their details from being presented to the jury.  Id.

2 Petitioner now argues that the trial court violated his right to due process by informing the jury of his prior conviction for rape and his alleged status as a habitual sexual offender.  Petition at 10.  He claims that the admission of this "irrelevant character evidence, from which a jury can draw no permissible inferences" is a constitutional error.  Id.

### 2) State Court Opinion

The California Court of Appeal rejected this claim, reasoning that petitioner did not specify which priors he wished to bifurcate and that the trial court's order granting the bifurcation did not apply to the priors relating to the enhancement provisions.  Opinion at 10-11.  Additionally any error was waived by petitioner's failure to object.  Id.

### 3) Applicable Law and Discussion

As previously stated, the United States Supreme Court "has never expressly held that it violates due process to admit other crimes evidence for the purpose of showing conduct in conformity therewith, or that it violates due process to admit other crimes evidence for other purposes without an instruction limiting the jury's consideration of the evidence to such purposes."  Garceau, 275 F. 3d at 774.

Here there was not an admission of evidence of other crimes per se, but an

---

"PC 667.61 SERIOUS SEX OFFENSE ENHANCEMENT

"It is further alleged that said defendant GLENN CARROLL HOLSOME, has A PRIOR CONVICTION FOR A FORCIBLE SEX CRIME, OR FOR 288(A) or that said defendant has one to two of the following that applies to defendant: RAPE WITH FORCE AND THREAT

"PC 667.71 HABITUAL SEXUAL OFFENDER

"It is further alleged that the defendant GLENN CARROLL HOLSOME, is a habitual sexual offender, in that he has a prior conviction for one of the following: 261(a)(2), 262(a)(1), 264.1, 288(a), 288(b), 289(a), 286, 288a, or 208(d) and is currently being prosecuted for one of the above sex offenses, [within] the meaning of Penal Code Section 667.71."

10

1  allegation of other crimes.  Just before the trial judge read the enhancement allegations to the
2  jury both attorneys were called to the bench and notified of the judge's decision to read them
3  despite his prior ruling.  It does not appear that there was any objection by defense counsel.
4         Even if the trial court erred in reading enhancement allegations to the jury any
5  error did not have "a substantial and injurious effect or influence in determining the jury's
6  verdict." Brecht, 507 U.S. at 637.
7         Petitioner was charged with seven felonies.  RTA at 387.  The jury's verdict came
8  after several days of intense deliberation after which the jury found petitioner guilty on two
9  counts, not guilty on four counts, and hung on an additional count.  RTA at 348-372.  There is no
10 evidence of record that the judge's reading of the enhancement allegations influenced the jury in
11 any way.
12        For these reasons petitioner is not entitled to relief on this claim.

VI. CONCLUSION

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's petition for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: April 3, 2009

CHARLENE H. SORRENTINO
UNITED STATES MAGISTRATE JUDGE